**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **EDWARD DIXON, Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **3:13-CV-01152-VLB** |
| **KEYSTONE HOUSE, INC., Defendant.** | : | |
| | : | |
| | : | **September 30, 2014** |

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S PARTIAL MOTION TO
DISMISS [DKT. 18]**

I.    **Introduction**

    The Plaintiff, Edward Dixon ("Dixon"), brings this action against Defendant

Keystone House, Inc. ("Keystone") alleging the following counts: (1)

discriminatory termination based on disability in violation of Title I of the

Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"); (2)

discriminatory termination based on perceived disability in violation of the ADA;

(3) unlawful termination of employment based upon a disability in violation of the

Connecticut Fair Employment Practices Act, Connecticut General Statute §§ 46a-

60, et seq. ("CFEPA"); (4) unlawful termination of employment based upon

perceived disability in violation of CFEPA; (5) unlawful termination in retaliation

for exercising workers' compensation rights in violation of Conn. Gen. Stat. § 31-

290a; (6) wrongful discharge in violation of public policy to provide employees

with a safe workplace pursuant to Conn. Gen. Stat. § 31-49; (7) negligent

misrepresentation; and (8) intentional infliction of emotional distress. Keystone

has moved to dismiss counts six, seven, and eight pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, the Motion to Dismiss is GRANTED as to each of the challenged counts.

II.    Factual Background

The following facts and allegations are taken from Dixon's Amended Complaint. Keystone is a not for profit organization that provides psychiatric rehabilitation services to adults with mental illness. [Dkt. 14-1, ¶ 3]. Keystone operates a group home in Norwalk where it provides support services to clients residing in the home. *Id.* at ¶ 6. Beginning around March 2010, Dixon began work as an employee for Keystone House. *Id.* As a full-time Community Support Specialist, Dixon provided counseling to Keystone's clients at the Norwalk group home. *Id.*

On January 7, 2011, a client residing at the group home became agitated, ran around threatening to throw a five-gallon jug out a window, and then assaulted Dixon. *Id.* at ¶ 8. The client repeatedly struck Dixon in the face and head and threw Dixon into a door and up a few hallway steps. *Id.* At some point during the attack Dixon was knocked unconscious. *Id.* Dixon awoke from his unconsciousness when he was outside and was transported by ambulance to a hospital for medical treatment *Id.* at ¶ 8–9.

Seventeen days after the attack, Dixon returned to work and informed his supervisors that he had severe migraines as a result of the attack. *Id.* at ¶ 11. Dixon's supervisors told him to seek medical attention and take the necessary time to heal. *Id.* Keystone's human resources manager told Dixon that Keystone

"did not provide workers' compensation insurance or benefits because it was a not for profit organization." *Id.* The human resource manager told Dixon that Keystone would reimburse him for his medical treatment related to the attack. *Id.*

In the following months, Dixon's migraines became worse and increased in frequency. *Id.* at ¶ 12. He developed dizziness, vertigo, and blurry vision and he reported the increasing severity of the migraines to his supervisor. *Id.* In the spring and early summer of 2011, Dixon was diagnosed with depression, post-traumatic headaches and post-traumatic stress disorder resulting from the attack. *Id.* at ¶ 14. In August 2011, Dixon informed his supervisor, Keystone's executive director, and Keystone's human resource manager that he was receiving medical treatment for migraines, depression, and anxiety disorders that resulted from the attack. *Id.* at ¶ 15. After Dixon expressed concern about the costs of co-pays, Dixon was again told that Keystone did not have workers' compensation benefits because it was a not for profit organization, and that it was the hospital's fault for releasing Dixon's attacker from the psychiatric unit too soon. *Id.* For the rest of 2011, Dixon continued to receive medical treatment for depression, anxiety disorders, post-traumatic headaches, and post-traumatic stress disorder. *Id.* at ¶ 16. He took time off from work as needed to receive medical treatment and heal, and he always informed Keystone when he would be absent. *Id.* at ¶ 17.

In March of 2012, Dixon retained a lawyer and filed a claim for workers' compensation benefits. *Id.,* Count Five ¶ 22. On April 3, 2012, Keystone terminated Dixon's employment, informing him it was for his excessive tardiness and absenteeism. *Id.* at ¶ 18.

Dixon filed a Complaint in Connecticut Superior Court Judicial District of Fairfield at Bridgeport on July 23, 2013. [Dkt. 1-1, at 3]. Following removal, Keystone filed a Motion to Dismiss Count Six; in response Dixon filed an Amended Complaint that added counts seven and eight to the original six counts, and then Keystone filed the instant Motion to Dismiss counts six, seven, and eight. [Dkts. 13, 14, 18].

III.   **Standard of Review**

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the

complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

IV.    **Discussion**

a. *Count Six: Failure to Provide a Safe Workplace in Violation of § 31-49*

Count Six of Plaintiff's complaint purports to assert a claim under Connecticut General Statute § 31-49, which requires employers to provide employees with a safe workplace and competent coworkers.[1] Defendant argues correctly that section 31-49 itself does not create a private cause of action. *See Perille v. Raybestos-Manhattan-Europe, Inc.*, 494 A.2d 555, 556 (Conn. 1985). However, Connecticut courts have recognized two occasions when an employee may invoke section 31-49 in a suit against his or her employer. First, the requirement to provide a safe workplace, as embodied by section 31-49, has been used as a standard for duty in common law negligence claims to recover for emotional distress. *See Perille*, 494 A.2d at 556. Second, employees have used

---

[1] Conn. Gen. Stat. § 31-49 (2014) states: "It shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent persons as his collaborators and to exercise reasonable care in the appointment or designation of a vice-principal and to appoint as such vice-principal a fit and competent person. The default of a vice-principal in the performance of any duty imposed by law on the master shall be the default of the master."

the requirement in wrongful discharge claims to show that an employer contravenes the "public policy" of section 31-49 by terminating an employee for refusing to work in unsafe conditions. *Parsons v. United Technologies Corp., Sikorsky Aircraft Div.*, 700 A.2d 655, 664 (Conn. 1997). Count Six as currently pleaded is ambiguous as to whether it attempts to assert a direct claim under section 31-49, a claim for negligence, a claim for wrongful discharge, or all three.

The ambiguity in Count Six begins with its title: "Defendant's Failure To Provide Plaintiff With a Safe Workplace and Fit and Competent Co-Workers In Violation of Conn. Gen. Stat. 31-49," [Dkt. 14-1].  This title suggests that Plaintiff is bringing a direct claim under section 31-49, which as noted above, is impermissible because section 31-49 does not provide a private cause of action.

The ambiguity continues in the body of Count Six, which includes allegations that could be read to support a negligence claim as well as allegations that could be read to support a wrongful discharge claim.  In regards to negligence, the body of Count Six states that Keystone has a "duty" to provide its employees with a safe workplace, and that Keystone "breached its duty," and that the breach caused Dixon's termination [*Id.*, Count Six, ¶¶ 21, 24, 28]. However, the Court notes that the word "negligence," or any variant of the word, is not found in the allegations of Count Six.  In regards to wrongful discharge, as an example, paragraphs 28 and 30 do not seek damages for the physical injuries sustained on the job, but rather for the emotional distress and financial loss caused by Dixon's termination. [Dkt. 14-1, Count Six ¶ 28, 30].

Dixon attempts to clarify Count Six in his Memorandum in Opposition of the Motion to Dismiss, stating that "the issue in Count Six is not the injury caused by the unsafe workplace, but rather, the fact that Plaintiff was wrongfully discharged as a result of Defendant's negligence." [Dkt. 21, at 9].  This does little to resolve the ambiguity of Count Six, and further, a complaint cannot be amended by a party's brief. *See, e.g., Natale v. Town of Darien*, No. CIV. 3:97CV583, 1998 U.S. Dist. LEXIS 2356, at *10 n. 2 (D. Conn. Feb. 26, 1998)("[Plaintiff] can not amend his complaint in a memorandum of law.")(citation omitted); *cf. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7, 9 (2d Cir. 2012) (noting that "plaintiff cannot amend the complaint through an appellate brief") (citations omitted).  Plaintiff now appears to explicitly deny that Count Six contains a claim for negligence.  In his opposition to Defendant's supplemental memorandum in support of its motion to dismiss, Plaintiff asserts "it is not the physical injury Plaintiff sustained in January 2011 that is at issue in Count Six, but rather, the fact that Plaintiff was wrongfully discharged. . . ." [Dkt. 45 at 3.] Because Plaintiff cannot amend his complaint in a memorandum, and because Plaintiff's attempt to remove ambiguity are thus unsuccessful, dismissal is warranted pursuant to Rule 8 of the Federal Rules of Civil Procedure, which allows the Court to dismiss a complaint that is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted).

In the interest of clarity the Court will consider below the substantive challenge to Plaintiff's claim for wrongful discharge.  Because Plaintiff denies

that Count Six is a claim for negligence, the Court will address only the claim for wrongful discharge.  If Plaintiff seeks leave to assert a section 31-49 negligence claim in an amended complaint, the Court notes that Connecticut's workers' compensation exclusivity provision bars a claim seeking damages for workplace physical injuries and emotional distress arising from workplace physical injuries; however a plaintiff may bring a claim for emotional distress that does not arise from physical injury or occupational disease. *See Perodeau v. City of Hartford*, 792 A.2d 752, 762-63 (Conn. 2002); *see also Rosario v. J.C. Penney*, 463 F. Supp. 2d 228, 233 (D. Conn. 2006) ("[T]he WCA does not bar an action to recover for emotional distress-type claims.") (citing *Perodeau*, 792 A.2d at 763).

### (1) Wrongful Discharge

To the extent that Count Six is a claim for wrongful discharge pursuant to section 31-49, Plaintiff must rely on an exception to the at-will employment doctrine. The general rule in Connecticut is that an employer may terminate an at-will employee for no reason or any reason at all without facing a liability in tort. *Sheets v. Teddy's Frosted Foods, Inc.*, 427 A.2d 385, 386 (Conn. 1980). Connecticut courts have crafted an exception to the at-will employment rule that permits a claim for wrongful discharge against an employer if a discharge "contravenes a clear mandate of public policy." *Id.* at 387. The exception is a narrow one and courts "should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." *Burnham v. Karl and Gelb, P.C.*, 745 A.2d 178, 182 (Conn. 2000) (internal quotation marks omitted).

To survive a motion to dismiss a claim of wrongful discharge, the employee must plead facts that plausibly show (1) that the employee's discharge contravened a public policy, and (2) that the employee was otherwise without a remedy, and "permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." *Burnham*, 745 A.2d at 182 (internal quotation marks omitted).

Plaintiff has failed to show that his termination contravenes the public policy established by section 31-49.  The Connecticut Supreme Court has held that section 31-49 establishes a public policy meriting an exception to the employment at-will doctrine when an employee refuses to work in an unsafe workplace and the employee has no other available statutory remedy. *Parsons*, 700 A.2d at 664. In *Parsons*, the court held that a civilian employee working for a defense contractor on a nonmilitary project could bring a claim for wrongful discharge when he was terminated for refusing a work assignment that would have required him to travel to a military base in Bahrain during Operation Desert Shield, a time when the United States Department of State had cautioned against non-essential travel to Bahrain.  *Parsons*, 700 A.2d at 663.  The Connecticut Supreme Court held that section 31-49, as well as a portion of the Connecticut Occupational Safety and Health Act, embody a public policy that "gives a Connecticut employee a cause of action for wrongful discharge against an employer transacting business in Connecticut if the employee is discharged for refusing to work under conditions that pose a substantial risk of death, disease

or serious physical harm and that are not contemplated within the scope of the employee's duties."  *Parsons*, 700 A.2d at 663.

Here there is no allegation that Plaintiff's workplace continued to be dangerous after January 2011, or that Plaintiff was fired for refusing to work in a dangerous workplace.  Plaintiff does not allege that he was terminated because of a refusal to work in dangerous conditions, but rather alleges in Count Six that "Dixon was told that he was terminated as a result of his excessive tardiness and absenteeism." [Compl. Count Six ¶ 28.]  Plaintiff argues that the Court should rely on *Gonzalez v. Lecoq Cuisine Corp.*, No. FBTCV136037490S, 2014 Conn. Super. LEXIS 1245 (Conn. Super. Ct. May 16, 2014).  However, that case is distinguishable, as the plaintiff in that case resigned from work when faced with the prospect of continuing sexual harassment.  *Cf. Perez v. Bridgeport Hosp.*, No. CV126009423S, 2012 Conn. Super. LEXIS 1957, at *6 (Conn. Super. Ct. Aug. 3, 2012) (distinguishing *Parsons* on the grounds that plaintiff did not allege that he was terminated for refusing to work under dangerous conditions). *Gonzalez* is consistent with *Parsons* in that the *Gonzalez* plaintiff's refusal to work in a harassing environment was similar to the *Parsons* plaintiff's refusal to work in a war zone.  The *Gonzalez* court found that the company had caused the plaintiff "foreseeable damages."  2014 Conn. Super. LEXIS 1245, at *23; *see also Moreno v. ABM Secs., Inc.*, No. CV126029357, 2013 Conn. Super. LEXIS 1386, at *12 (Conn. Super. Ct. June 18, 2013) (denying defendant's motion for summary judgment on plaintiff's section 31-49 wrongful discharge claim where plaintiff resigned from work after she was assigned to work with a co-worker who had

previously assaulted her because "[t]he danger posed to an employee by an unstable co-worker may be sufficiently serious in exceptional cases to satisfy the objective standard established in *Parsons*."); *Anderson v. United Way, Inc.*, No. NNHCV116017085, 2011 Conn. Super. LEXIS 3323, at *6-12 (Conn. Super. Ct. Dec. 27, 2011) (denying motion to strike plaintiff's section 31-49 wrongful discharge claim where plaintiff alleged that she was terminated for disobeying her employer's instructions where plaintiff feared that complying with the instructions would expose her to risk of physical harm).

In addition to his failure to plead facts that plausibly show that his termination contravened a public policy, it also appears that Plaintiff has failed to show that he was otherwise without a remedy.  In counts one through five of the Complaint, Plaintiff asserts multiple claims of discriminatory termination under both federal and state anti-discrimination statutes.  To the extent that Plaintiff's section 31-49 wrongful termination claim seeks a remedy for a wrongful termination arising from the injuries suffered in January 2011, it would appear that Plaintiff has, and is pursuing, other remedies.

Given the ambiguity of Count Six, Dixon's disavowal of a section 31-49 negligence claim, and Dixon's failure to successfully plead a section 31-49 wrongful discharge claim, the Motion to Dismiss Count Six is GRANTED. If Plaintiff wishes to file an amended complaint that alleges an unambiguous claim under section 31-49, Plaintiff must file a motion for leave to amend, supported by a memorandum of law and attaching the proposed amended complaint, within 21 days of this ruling.

  **b.** *<u>Count Seven: Negligent Misrepresentation.</u>*

  **Keystone also moves to dismiss the claim of negligent misrepresentation for failure to state a claim on the grounds it is barred by the Workers' Compensation Act. [Dkt. 18-1, Def.'s Mem. 33]. Connecticut has adopted the claim of negligent misrepresentation from section 552 of the Restatement (Second) of Torts (1979), which states: "One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Craine v. Trinity College*, 791 A.2d 518, 544 (Conn. 2002) (internal quotation marks omitted). "Even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." *Id.* (internal quotation marks omitted).**

  **Dixon alleges that Keystone made at least two misrepresentations. First, that Keystone "repeatedly" told Dixon he could take time off from work without any repercussions to recover from his personal injuries. [Dkt. 14-1, Count Six ¶ 26, Count Seven ¶, 29]. Dixon argues he relied on the statements when he took time off to seek medical attention and rest in the latter half of 2011 and into 2012. *Id.* ¶¶ 16, 17. However, the only date Keystone is alleged to have made the representation is January 24, 2011, which is two weeks after the attack and fifteen months before Dixon was terminated. In the weeks after the attack it is unlikely, and not alleged, that either party foresaw Dixon's long-term struggle with**

physical and emotional pain. Indeed, Dixon pleads that he received an annual employee evaluation in which he was told that he "consistently exceeds expectations" and at which it was noted that his time and attendance were good. [Dkt. 14-1, Facts ¶ 13].  Dixon has not plead that the January 2011 statement was a blank check that continued to excuse him from work more than a year after it was made and therefore Dixon has not plead sufficient factual matter to state a claim for negligent misrepresentation.

Dixon alleges a second misrepresentation, stating Keystone informed him that the organization "did not provide workers' compensation insurance or benefits because it was a not for profit organization." [Dkt. 14-1 ¶ 11]. The Complaint does not say whether Keystone in fact had workers' compensation coverage, and thus Dixon has not plead facts to show a false statement. The Complaint could also be interpreted as alleging that Keystone informed Dixon that he had no rights to workers' compensation because Keystone was a not for profit, but it is not clear. Therefore, Dixon has plead insufficient facts to show a claim for relief on this second alleged misrepresentation.

There being inadequate facts plead for both alleged misrepresentations, Keystone's Motion to Dismiss count seven is GRANTED for failure to state a claim upon which relief can be granted. If Plaintiff wishes to file an amended complaint that alleges facts adequate to state claim of negligent misrepresentation, Plaintiff must file a motion for leave to amend, supported by a memorandum of law and attaching the proposed amended complaint, within 21

days of this ruling.  If multiple misrepresentations are alleged in an amended complaint, each alleged misrepresentation should be plead as a separate count.

Keystone's argument, that a claim for negligent misrepresentation is barred by the exclusivity provision of the Worker's Compensation Act, [Dkt. 18-1, Def.'s Mem. 33], is applicable if the alleged damage is an injury or occupational disease arising out of and in the course of employment. However, as noted above, workers' compensation exclusivity does not bar claims for compensation for emotional impairment unrelated to physical injuries or occupational disease, nor does the exclusivity provision bar actions for damages arising from an employee's termination, *see, e.g.*, *Fulco v. Norwich Roman Catholic Diocesan Corp.*, 609 A.2d 1034, 1038-39 (Conn. App. 1992) (finding that the trial court improperly held that plaintiff's claim for emotional distress arising from his discharge from employment was barred by the exclusivity provision of the Workers' Compensation Act).  If Dixon pleads that a negligent misrepresentation was the cause of his termination, then the exclusivity provision of the Workers' Compensation Act would not apply. *See Craine*, 791 A.2d at 544 (affirming claim for negligent misrepresentation when professor lost her job for a lack of scholarly publication when she was told by her employer that she would retain her position if she devoted her time to original research). If Dixon pleads that a negligent misrepresentation caused physical injuries arising out of and in the course of employment, then the Workers' Compensation Act may bar his claim.  *See, e.g.*, *Gomez v. Laidlaw Transit, Inc.*, 455 F. Supp. 2d 81, 91 (D. Conn. 2006).

    c. <u>*Count Eight: Intentional Infliction of Emotional Distress*</u>

Keystone also moves to dismiss Count Eight, arguing that it fails to state a claim upon which relief can be granted because Keystone's actions were not extreme and outrageous. [Dkt. 18, Def.'s Mem. 35–36]. To prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove:

> (1) that the actor intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the Plaintiff was severe.

*Appleton v. Bd. of Educ. of the Town of Stonington*, 757 A.2d 1059, 1062 (Conn. 2000). Extreme and outrageous conduct goes "beyond all possible bounds of decency, [is] regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* at 1062 (quoting 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)).

"[I]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function. . . . [T]he court is to determine whether the allegations of a complaint . . . set forth behaviors that a reasonable fact finder could find to be extreme and outrageous." *Hartmann v. Gulf View Estates Homeowners Ass'n, Inc.*, 869 A.2d 275, 278 (Conn. App. Ct. 2005). The court does not perform a finding of fact, but rather makes an assessment as a matter of law whether the alleged conduct fits the criteria required to establish a claim of intentional infliction of emotional distress. *Id.* "Only where reasonable minds disagree does it become an issue for the jury." *Appleton,* 757 A.2d at 1062. In

15

*Appleton*, the Court held that it was not extreme and outrageous when the defendant principal was alleged to have questioned the plaintiff teacher's competency and vision, made condescending comments, required two psychological evaluations of plaintiff, criticized plaintiff in front of colleagues, and called plaintiff's daughter to tell her the plaintiff was acting strange. *Id.* at 1063.

Even in the absence of extreme and outrageous conduct by the employer, an employee's termination can cause severe stress and anxiety. To put in prospective the level of conduct considered extreme and outrageous, even terminations that are illegal have not exceeded the threshold. *See e.g., Campbell v. Town of Plymouth*, 811 A.2d 243, 252 (Conn. App. Ct. 2002) (holding that the defendant-employer's conduct was not extreme and outrageous when defendant repeatedly harassed the plaintiff-employee to submit erroneous and fraudulent reporting information to a state agency, and then fired employee for not doing so); *Allen v. Egan*, 303 F. Supp. 2d 71, 78 (D. Conn. 2004) (holding that employment discrimination is illegal but is not per se extreme and outrageous).

It is the conduct that must be extreme and outrageous; "wrongful motivation by itself does not meet the standard." *Perez-Dickson v. City of Bridgeport*, 43 A.3d 69, 101 (Conn. 2012). In cases where a plaintiff has successfully pled extreme and outrageous conduct, there often is an element of public ridicule, obscene language, or insulting comments. *See Campbell*, 811 A.2d at 252 (citation omitted).

Dixon alleges that Keystone committed extreme and outrageous conduct by providing an employee suffering from physical pain and mental stress with false information about workers' compensation, telling the employee he may take time off from work but expecting that the employee would be terminated for doing so, and then terminating the employee when he took time off. [Dkt. 14-1, Count Eight ¶ 11, 15, 29]. As discussed above with regards to negligent misrepresentation, Dixon has not plead sufficient facts to support a claim that he could have justifiably relied on Keystone's encouragement to take time off from work. As noted above, Dixon alleges that he received a positive employee evaluation on March 31, 2011, approximately two months after he alleges he was told to take to take the necessary time to heal, in which his time and attendance were noted as good.  Plaintiff does not allege that after he returned to work he was given carte blanche permission to be absent at will again.  Even if Dixon plead dates in 2012 leading up to his termination that Keystone encouraged him to take time off from work, the conduct is not extreme or outrageous as a matter of law. Keystone's conduct did not go "beyond all possible bounds of decency," nor is it "utterly intolerable in a civilized community." *See Appleton*, 757 A.2d at 1062. Although not dispositive, none of Keystone's personnel are even alleged to have insulted, embarrassed, or publicly ridiculed Dixon.

The Complaint does not plead sufficient enough factual matter to constitute extreme and outrageous conduct. Therefore, Keystone's Motion to Dismiss Count Eight is GRANTED for failure to state a claim upon which relief can be granted.

**V.**     **Conclusion**

For the above reasons, Keystone's Motion to Dismiss counts six, seven, and eight is GRANTED. If Plaintiff wishes to file an amended complaint re-pleading count six and/or count seven, Plaintiff must file a motion for leave to amend, supported by a memorandum of law and attaching the proposed amended complaint, within 21 days of this ruling.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 30, 2014

18